## SCHULTZ *v.* THE PIETRO G.

*(Circuit Court, S. D. New York. November 7, 1889.)*

1. SHIPPING—BILL OF LADING—SHORTAGE.

The clause, "I do not know the weight," inserted by the master in a bill of lading given for "about 200 tons," casts on the consignee the burden of proving that he did not receive all that was delivered to the ship under the bill, though less than 200 tons was received by him, and, failing to prove this, he cannot recover.

2. SAME—DUTY OF CARRIER.

Where two lots were delivered to a ship under different bills of lading, each containing the clause, and no evidence was given to show how much was originally delivered under each bill of lading to the ship, the consignee of one lot cannot recover without showing that less was delivered to him than was delivered to the ship under his bill of lading, although he shows that the consignee of the other lot received the whole quantity mentioned in his bill of lading.

In Admiralty. Libel for shortage. On appeal from district court. 38 Fed. Rep. 148.

*Wing, Shoudy & Putnam,* for Schultz.

*Ullo, Ruebsamen & Hubbe,* for the Pietro G.

WALLACE, J. Two lots of scrap-iron were received by the bark at Antwerp for transportation to New York, and bills of lading, one for each lot, were given by the master,—one reciting the receipt by the ship of about 500 tons of iron; the other reciting the receipt of about 200 tons of iron; each bill of lading having the qualifying clause written therein by the master, "I do not know the weight." The libelants, by indorsement of the bill of lading for the 200 tons, became the owners of that lot of the iron, and bring this suit, alleging that the ship "has not delivered the said iron to libelants, nor any part thereof, except 164 tons." They have given no evidence of the quantity of the iron actually received by the ship at Antwerp. The ship delivered 500 tons of the iron on board to the consignees under the other bill of lading, and subsequently delivered 164 tons to the libelants; and what was thus delivered was the whole quantity received on board at Antwerp. There is no evidence in the case that less was delivered to the libelants than was received on board the ship as the lot mentioned in their bill of lading, or that any more was delivered by the ship to the other consignees than was received by the ship as the lot covered by their bill of lading. There is no evidence to show which of the two lots was first received on board the ship, or that the lot first discharged was not the lot last received on board, or that what was delivered to libelants was not the lot that belonged to them. The libelants do not claim in their libel that the iron which was delivered to them was not the lot which belonged to them, but aver that the quantity delivered was less than they were entitled to. The clause inserted in the bills of lading by the master, stating that he did not know the weight, qualified the effect of the recital as an admission of the number of tons of iron received on board the ship. It was equivalent to a statement by the master that he had not so verified the truth of the recital of the quantity received on board as to be willing to abide

v.40F.no.8—32

by it. Such a clause neutralizes the force of the recital as evidence, and shifts the burden of proof from the ship to the owner in a case like the present, and requires him to show that he did not receive all of his property that was actually received by the ship. *Eaton* v. *Newmark*, 37 Fed. Rep. 375; *Matthiessen* v. *Gusi*, 29 Fed. Rep. 794. When a discrepancy is discovered before an acceptance by the owner, and acceptance is refused on that ground, and the carrier put to an action for the freight, it would be incumbent upon the latter to prove affirmatively a tender of delivery of all the cargo actually received for the owner; but this is not such a case. It appears in evidence that the two lots of iron were not kept distinct on board the ship. Consequently, if there were any evidence in the case to show that the libelants did not receive all they were entitled to, the ship would not be exonerated by proving that what was delivered to both consignees was all the iron actually received on board. But in the absence of such evidence, or of any evidence to show that a larger quantity was delivered to the other consignees than belonged to them, the libelants cannot recover. It was the duty of the master to keep the two lots distinct. If he had done this, the libelants would have had no reason to suppose that they did not receive all the iron that belonged to them, and this suit probably would not have been brought; but the libelants cannot recover upon any theory of a breach of duty in this respect on the master's part, because they do not show that they sustained any loss in consequence of his conduct. The libel by the master in the suit brought by him for demurrage against the present libelants alleges delivery to them of all the iron received for them; and the statements of the libel cannot be regarded as an admission that 200 tons were actually received on board the ship. The libel is dismissed, without costs of the district court, but with costs of this court.